IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KENDRICK HERRING,

     Plaintiff,

v.                                                  CASE NO. 4:15-cv-402-RH-GRJ

JEFF MAHONEY, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

     This matter is before the Court on ECF No. 48, Defendants' Motion

for Summary Judgment and Incorporated Memorandum of Law. Plaintiff

has not filed a response in opposition and the time for doing so has

expired.[1] The motion for summary judgment is therefore ripe for review. For

the reasons discussed below, it is recommended that the motion for

_____

     [1] Defendants filed their motion for summary judgement on August 18, 2017.
(ECF No. 48.) Accordingly, the Court issued a summary judgment notice to Plaintiff on
August 21, 2017, directing Plaintiff to file his response and any evidentiary materials by
September 20, 2017. (ECF No. 50.) Plaintiff then filed a motion for extension of time,
which the Court granted on October 12, 2017, extending the deadline for Plaintiff's
response to November 13, 2017. (ECF Nos. 54–55.) Plaintiff then filed another motion
for extension of time, which the Court granted in part on November 29, 2017, extending
the deadline for Plaintiff's response to December 28, 2017. (ECF Nos. 56–57.) The
Court advised Plaintiff that no further extensions of time would be granted absent
exigent circumstances. (ECF No. 57.) As of the date of this report and
recommendation, Plaintiff has failed to respond.

summary judgment should be granted.

# I.  INTRODUCTION

Plaintiff's claims center around his March 19, 2011 arrest for aggravated assault on a law enforcement officer, possession of a firearm by a convicted felon, carrying a concealed firearm, and resisting an officer with violence after law enforcement located Plaintiff by tracking his cell phone without obtaining a warrant. Plaintiff was later also charged in the same case with second degree murder and attempted first degree murder.

Plaintiff was acquitted of aggravated arrest on a law enforcement officer and resisting an officer with violence, but was convicted of second degree murder, attempted first degree murder, possession of a firearm by a convicted felon, and carrying a concealed firearm. On appeal, however, the First District Court of Appeals ("First DCA") determined that the officers should have obtained a warrant prior to obtaining Plaintiff's real-time cell phone location data. The First DCA therefore reversed the trial court's denial of Plaintiff's motion to suppress and remanded the case to the trial court.

Plaintiff initiated this case on August 12, 2015, while he was

incarcerated by the Florida Department of Corrections.[2] In his original complaint Plaintiff brought various claims against twelve Defendants. (ECF No. 1.) Plaintiff then filed an amended raising claims for malicious prosecution, excessive force, false arrest, and false imprisonment. Plaintiff named five Defendants: (1) Investigator Jeff Mahoney; (2) Investigator Vincent Boccio; (3) Officer Phil Hinds; (4) Investigator Chris Corbitt; and (5) Federal Department of Law Enforcement Agent William Bullough. (ECF No. 17.) The Court dismissed all of Plaintiff's claims, except for the malicious prosecution claims against Officer Mahoney, Officer Boccio, and Officer Hinds ("Defendants"). (ECF Nos. 31, 33.)

Defendants now move for summary judgment on Plaintiff's malicious prosecution claims. (ECF No. 48.) Plaintiff has not filed any evidence in opposition to the motion for summary judgment.[3]

Although Plaintiff did not submit any sworn affidavits or other evidentiary materials in opposition to summary judgment, Plaintiff's amended complaint is signed under penalty of perjury. (ECF No. 17.) Thus, Plaintiff's amended complaint is properly treated by the Court like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir.

---

[2] Plaintiff is currently incarcerated now at the Leon County Jail.

[3] Plaintiff also did not respond to Defendants' prior motion to dismiss.

1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). The Court may therefore consider Plaintiff's sworn allegations in the amended complaint in ruling on the motion for summary judgment.

## II.  EVIDENCE

On March 18, 2011, the Tallahassee Police Department ("TPD") was investigating a murder that occurred during an attempted drug deal. (ECF No. 26-4); *Herring v. State*, 168 So. 3d 240 (Fla. 1st DCA 2015). When the dealer-victims arrived at the designated location, the buyer began shooting into the victims' car. (ECF No. 49-1 at 48:8–13 ("Trial TR").)[4] One victim was shot in the arm and the other died from gunshot wounds. (*Id.* at 51:11–14; 108:5–18; 377:13–378:4.) The surviving victim met with Officer Boccio—who was, at the time, a homicide investigator with the TPD—and described what happened, including that the shooter was dressed in black. (*Id.* at 52:20–53:2; 60:23–61:15; 111:16–112:24.)  Another witness confirmed the shooter's black attire. (*Id.* at 69:5–13.) The surviving victim also described cell phone calls back and forth between the deceased

---

[4] ECF No. 49-1 contains trial transcript excerpts from *Herring v. State*, No. 2011-CF-949 (Fla. Leon County Ct. Mar. 23, 2011).

victim and the buyer-shooter. (*Id.* at 122:7–13.)

Law enforcement thereafter obtained the victim's cell phone records and identified the suspected shooter's cell phone number. (*Id.* at 117:2–20.) Law enforcement obtained GPS coordinates for the suspect's cell phone based on the cell phone towers interacting with the cell phone. (*Id.* at 117:2–9; 175:14–177:20.)  Accordingly, TPD responded to the identified area—Capital Circle Northwest—to search for the suspect. (*Id.* at 118:11–20.)

At approximately 4:30 a.m. TPD located Plaintiff sitting at a bus stop on Capital Circle. (*Id.* at 118:21–119:4; 131:23–132:8.) Plaintiff was asleep at the bus stop. (ECF No. 17.) Several officers, including Officer Boccio, made one or two passes by Plaintiff in an unmarked van, while other TPD officers initiated surveillance on Plaintiff. (Trial TR at 119:21–120:10.) The officers all carried weapons and wore exterior vests that said "POLICE" and shirts with "POLICE" markings down the sleeves. (*Id.* at 120:18–22; 230:15–24.) The unmarked van also had police lights that were visible upon activation. (*Id.* at 120:23–121:1.)

The unmarked van pulled up to the bus stop and the van's police lights were activated. (*Id.* at 123:13–17; 124:4–6; 220:3–14.) Defendants jumped out of the van yelling, identifying themselves as police officers and

giving Plaintiff commands to show his hands and to get down. (*Id.* at 123:18–23; 124:6–8; 233:9–23.)

Officer Mahoney positioned himself in front of Plaintiff with his rifle pointed at Plaintiff, and told Plaintiff to show his hands and get on the ground. (*Id.* at 124:24–125:8; 235:11–12.) Plaintiff looked at Defendants, stood, turned, and started running. (*Id.* at 124:8–9; 235:9–14.) Officer Mahoney yelled, giving the command to tase Plaintiff. (*Id.* at 235:13–16.) As soon as Officer Mahoney gave the command, Plaintiff made a quick movement straight toward his waistband. (*Id.* at 124:9–10; 125:20–24; 235:15–22.) At that point, Officer Boccio tased Plaintiff as Officer Mahoney simultaneously shot Plaintiff in the stomach. (*Id.* at 125:10–12; 145:14–23; 235:23–236:16.) Officer Mahoney was in fear of his life at the moment that Plaintiff made the move for his waistband, believing Plaintiff would kill him if he did not shoot Plaintiff. (*Id.* at 237:3–16; 250:2–15.)

Defendants moved in once Plaintiff was on the ground, handcuffed Plaintiff, and located Plaintiff's cell phone and a .45 caliber handgun on the ground underneath Plaintiff. (*Id.* at 126:3–9; 146:2–3.) The cell phone's number was the same number that had been used to communicate with the victim earlier that night. (*Id.* at 126:13–19.) Defendants then arrested Plaintiff.

As the lead officer in the investigation, Officer Boccio filed a probable

cause affidavit later that day charging Plaintiff with aggravated assault on a

law enforcement officer, possession of a firearm by a convicted felon,

carrying a concealed firearm, and resisting an officer with violence. (*Id.* at

111:24–112:11; ECF No. 49-2 ("PC Aff. 1").) In the probable cause affidavit

Officer Boccio described how the officers approached Plaintiff at the bus

stop:

> The Investigators were wearing their usual "raid" ballistic vests
> which have large white lettering which identify them as "Police"
> or "U.S. Marshall". As the group of Investigators approached
> Herring lifted his head and recognized that the investigators
> were approaching him. The Investigators were yelling, "Police!
> Show me your hands!" Herring stood up and dropped his hands
> toward his waistband as opposed to obeying commands given
> by the Investigators.

(*Id.*) Officer Boccio stated that both he and Officer Mahoney believed

Plaintiff was not complying with the officers' commands. (*Id.*) Officer Boccio

further stated:

> In a proffered statement given by Inv. Mahoney, he indicated
> he knew he was searching for a homicide suspect who was
> possibly still armed with the firearm used in the homicide. Inv.
> Mahoney also indicated that he has learned, via his training
> and experience, that the waistband is a common location for
> suspects to conceal firearms. Inv. Mahoney said he
> immediately became fearful for his life when Herring neglected
> to obey his commands and instead reached towards his
> waistband.

(*Id.*) A separate probable cause affidavit was then filed by another officer several days later charging Plaintiff with first degree murder and attempted murder. (ECF No. 49-3.)

On approximately April 4, 2011, the state attorney's office reviewed the probable cause affidavits and determined there was sufficient probable cause to charge Plaintiff by Information with second degree murder, attempted first degree murder, aggravated assault on a law enforcement officer, possession of a firearm by a convicted felon, carrying a concealed firearm, and resisting an officer with violence. (ECF No. 49-4.) In charging Plaintiff by Information the assistant state attorney took an oath "stating good faith in instituting the prosecution and certifying that testimony was received under oath from the material witness or witnesses for the offense[s] pursuant to F.R.Cr.P. 3.140(g)." (*Id.* at 2.)

Then on April 20, 2011, a Leon County Grand Jury returned an Indictment charging Plaintiff with the same charges set forth in the Information, except charging Plaintiff with first degree murder instead of second degree murder. (ECF No. 49-5.) With respect to aggravated assault on a law enforcement officer, the Grand Jury found that Plaintiff,

> unlawfully, knowingly and intentionally ma[d]e an assault upon a law enforcement officer, Tallahassee Police Officer Jeff Mahoney, while engaged in the lawful performance of duty, by

threatening to do violence to the officer with a firearm, a deadly weapon, which the Defendant actually possessed, creating a well founded fear to the officer that such violence was imminent, contrary to Sections 775.087 and 784.045(1)(a)2, Florida Statutes.

(*Id.* at 2.) Additionally, as to resisting an officer with violence, the Grand Jury found that Plaintiff,

unlawfully, knowingly, and willfully resist[ed], obstruct[ed] or oppose[d] a law enforcement officer, Tallahassee Police Officer Jeff Mahoney, in the lawful execution of a legal duty, effecting an arrest, by offering violence or by doing violence to the officer by attempting to draw a firearm, contrary to Section 843.01, Florida Statutes.

(*Id.* at 3.)

Plaintiff went to trial in October 2013. After the State presented its evidence, the court granted Plaintiff's motion for judgment of acquittal on the aggravated assault and resisting an officer with violence charges, finding the evidence insufficient to sustain a conviction. (ECF No. 26-1 at 4 ("Docket"); Trial TR at 416:19–417:12.) The judge stated:

[T]here's insufficient evidence on aggravated assault on a law enforcement officer and resisting an officer with violence. Certainly, I think there's sufficient evidence on it without violence, but it's not charged without violence. He didn't respond to the officer's directions immediately, so he was resisting. I don't find it's with violence. So [judgment of acquittal] as to those [two].

(Trial TR at 417:5–12.)

Plaintiff then decided to testify as part of the defense's case-in-chief. (*Id.* at 424:2–426:3.) After being sworn as a witness, Plaintiff admitted, under oath, that he had a loaded gun "tucked on [his] right side inside [his] waistband," at the bus stop when the officers arrived. (ECF No. 59 at 44:7–9; Trial TR at 448:25–449:8; 453:10–13.) He also admitted that he was, at the time, in possession of the cell phone at issue. (Trial TR at 467:19–468:3.) Plaintiff testified that he woke up on the bench to the officer's commands to get on the ground and show his hands. (ECF No. 59 at 478:22–479:3.) He admitted he did not comply with those orders and stated, "I stood up and I started running and my pants was falling and I grabbed my pants. I'm reaching and pulling my pants up and got shot before I could even touch my waistband." (*Id.* at 479:17–24.) Plaintiff further testified that if officers were pointing a gun, his mentality was that instead of complying with orders, the proper behavior is to "get up and run and not get caught." (*Id.* at 480:5–16.)

At the conclusion of the trial Plaintiff was convicted of second degree murder, attempted second degree murder, possession of a firearm by a convicted felon, and carrying a concealed firearm. (ECF No. 49-6.) On May 22, 2015, however, the First District Court of Appeal ("First DCA") reversed Plaintiff's convictions, finding that exigent circumstances did not exist when

the officers traced Plaintiff's cell phone location, and remanded the case

for further proceedings. (ECF No. 17 at 6); *see Herring*, 168 So. 3d at 240.

The case remained pending when Plaintiff filed the instant action on

August 12, 2015. (ECF No. 26-1.)

Although Plaintiff claims in his amended complaint that he was

asleep when the officers approached him at the bus stop and says nothing

more, Defendants (curiously) filed Plaintiff's sworn responses to Officer

Boccio's and Officer Hinds' interrogatories in support of their motion for

summary judgment. (ECF Nos. 49-8, 49-9.) In his sworn responses Plaintiff

says something completely different from his sworn trial testimony at his

criminal trial. In the sworn responses Plaintiff claims Officer Boccio's

affidavit and Officer Hinds' statements were the foundation for the decision

to prosecute Plaintiff for aggravated assault on a law enforcement officer

and resisting an officer with violence. (ECF No. 49-8 ¶¶ 2–6; ECF No. 49-9

¶ 6.)) Plaintiff says contrary to Officer Boccio's affidavit and contrary to

Officer Hinds' assertions, he never stood up and did not run. (ECF No. 49-

8 ¶¶ 8–9, 12; ECF No. 49-9 ¶¶ 8–9, 12.) Instead, Plaintiff says he was

asleep when the officers arrived and he remained asleep. (ECF No. 49-8

¶¶ 8–9, 12; ECF No. 49-9 ¶¶ 8, 10.) Plaintiff asserts he was asleep when

the officers gave their orders, asleep when Officer Boccio tased Plaintiff,

and asleep when he was shot. (ECF No. 49-8 ¶¶ 10–11; ECF No. 49-9 ¶ 10.)

## III.  SUMMARY JUDGEMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988). But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff") "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v.*

*City of Clewiston,* 848 F.2d 1534, 1540 n.12 (11th Cir. 1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV.  DISCUSSION

As an initial matter, Plaintiff's malicious prosecution claim conflates

two separate theories. In his complaint Plaintiff says the officers did not have probable cause to arrest him for aggravated assault on a law enforcement officer or resisting an officer with violence because he was sleeping when Defendants approached him at the bus stop, tased him, and shot him. He also says that based on the First DCA's ruling, there was no probable cause for the original proceeding. As the Court previously explained, however, these are two separate and distinct issues. (ECF No. 31 at 8–9; ECF No. 33.) The First DCA's ruling does not address whether there was probable cause to *arrest*. Instead, the First DCA determined that because Plaintiff had a reasonable expectation of privacy in his cell phone records, and because exigent circumstances did not exist to overcome the warrant requirement, the officers should have obtained a warrant prior to obtaining Plaintiff's realtime cell phone location data. *Herring*, 168 So. 3d at 242, 244.

Whether the officers had probable cause to obtain a warrant for Plaintiff's cell phone records has nothing to do with whether the officers had probable cause to arrest Plaintiff for aggravated assault on a law enforcement officer and resisting an officer with violence. Furthermore, whether the officers had probable cause to obtain a warrant for his cell phone records is not an issue before this Court—nor could it be because at

the time Plaintiff filed his complaint, the remaining charges (second degree

murder, attempted second degree murder, possession of a firearm by a

convicted felon, and carrying a concealed firearm) were still

pending—albeit on remand from the First DCA. (ECF No. 26-1.)[5]

The malicious prosecution claim before this Court is focused

squarely on whether the officers had probable cause to arrest Plaintiff for

aggravated assault on a law enforcement officer and resisting an officer

with violence. Plaintiff claims they did not because he was asleep when the

officers approached, tased, and shot him. Although the amended complaint

alleges in a conclusory manner that the officers lacked probable cause to

arrest him for aggravated assault and resisting an officer with violence,

Plaintiff's sworn responses to Officer Boccio's and Officer Hinds'

interrogatories reveal that Plaintiff's malicious prosecution claim is

premised upon the allegedly fabricated statements by Officer Boccio and

Officer Hinds as support for the arrest.

The problem with Plaintiff's theory is that he has not filed anything

refuting his trial testimony in which he expressly admitted under oath that

when the officers arrived he got up [from the bus stop] and ran.  This

admission standing alone is more than sufficient to show there was at least

---

[5] Although Defendants represent that the remaining charges have since been
nolle prossed by the State, there is no evidence in the record reflecting this.

arguable probable cause to arrest him for aggravated assault on a law

enforcement officer and resisting an officer with violence.

Although Plaintiff has not responded to Defendants' motion for

summary judgment Defendants are not entitled to summary judgment

simply because Plaintiff failed to respond. Rather, the Court must review

the evidence to determine whether there is a disputed material fact and

whether Defendants are entitled to judgment as a matter of law.  A review

of the record evidence reveal that Defendants are indeed entitled to

summary judgment.

## A.  Judicial Estoppel

Defendants first argue that Plaintiff is judicially estopped from

changing his testimony about the circumstances surrounding his arrest.

Under the doctrine of judicial estoppel, a party is precluded from

asserting a claim in a legal proceeding that is inconsistent with a position

taken by that party in a previous proceeding. *Burnes v. Pemco Aeroplex,*

*Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). The Supreme Court has stated,

"[w]here a party assumes a certain position in a legal proceeding, and

succeeds in maintaining that position, he may not thereafter, simply

because his interests have changed, assume a contrary position,

especially if it be to the prejudice of the party who has acquiesced in the

position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)); *see also McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1192 (11th Cir. 1991) ("Judicial estoppel is applied to the calculated assertion of divergent sworn positions."). "Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process," and "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* (citing *New Hampshire*, 532 U.S. at 749–50; 18 James Wm. Moore et al., Moore's Fed. Practice § 134.30, p. 134–62 (3d ed. 2000)).

Courts should consider several factors in determining whether judicial estoppel should be applied: (1) whether the present position is clearly inconsistent with the party's prior position; (2) whether the party succeeded in persuading a court to accept that party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage on the opposing party if not estopped. *New Hampshire*, 532 U.S. at 750–51 (citations omitted). The Eleventh Circuit has outlined two primary factors to consider in applying the bar of judicial estoppel. *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010) (citing *Burnes*, 291 F.3d at 1282). "First, it must be shown that

the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.*

In considering these factors, the Court concludes that judicial estoppel precludes Plaintiff from asserting a diametrically different position in this case from the one he presented in the underlying criminal trial.

Plaintiff's position in the instant case is the polar opposite of the position he took in his criminal case. In his criminal case Plaintiff made the fully-informed decision to testify. He admitted, under oath, that he woke up on the bench to the officer's commands to get on the ground and show his hands. Notably, he admitted, under oath, that he did not comply with those orders and instead "stood up and . . . started running . . . ." (ECF No. 59 at 479:19–22.)  He further admitted, under oath, that as he was running, he reached to pull up his pants and then got shot. (*Id.* at 479:21–24.) Plaintiff even admitted, under oath, that instead of complying with the officers' orders, his mentality when officers were pointing a gun at him was to "get up and run and not get caught." (*Id.* at 480:15–16.) In short, Plaintiff's position at trial was that he stood up and ran but that he committed neither aggravated assault with a deadly weapon nor did he resist an officer with violence.

In this case, presumably in an attempt to bolster his malicious prosecution claim, Plaintiff takes the sworn position that he never stood up (and in fact never even woke up), was simply shot and tased for no reason, and that Defendants then fabricated a story so they could charge him with aggravated assault on a law enforcement officer and resisting an officer with violence.

Both positions were made under oath—one in his prior criminal trial, and one in the instant case. Ironically, the position Plaintiff takes now, presumably, would have been more favorable at his criminal trial than the one he actually took at his criminal trial. The Court can discern no other reason that Plaintiff would now take an inconsistent position than to make a mockery of the judicial system. Notably, Plaintiff failed to respond to or otherwise challenge Defendants' motion for summary judgment, nor does he attempt to disprove the facts asserted therein. Plaintiff would undoubtedly derive an unfair advantage over Defendants if not estopped from now asserting an inconsistent position.[6] The entirety of Plaintiff's malicious prosecution claim is based on the allegedly fabricated

---

[6] As discussed *infra*, based on the sworn testimony Plaintiff gave at trial, Defendants had at least arguable probable cause to arrest him for aggravated assault on a law enforcement officer and resisting arrest with violence. *See Howard v. Gee*, No. 8:10-CV-1533-T-30TGW, 2012 WL 12893784, at *3–4 (M.D. Fla. Oct. 2012) (applying judicial estoppel in malicious prosecution claim where plaintiff testified in his criminal trial that he tripped over a cot when the arresting officer grabbed for him but took the position in his civil case that the officer charged at him and tackled him).

information provided by the officers regarding the arrest. Plaintiff should be judicially estopped from taking this wholly inconsistent position.

## B.  Absolute Immunity

Officer Mahoney and Officer Hinds next argue they are entitled to absolute immunity from Plaintiff's malicious prosecution claims because there is no evidence that they had any input or influence on the initiation of criminal proceedings against Plaintiff for aggravated assault on a law enforcement officer and resisting an officer with violence.

The record is devoid of any evidence suggesting that Officer Hinds provided statements or sworn testimony in support of Plaintiff's arrest or was otherwise involved in the initiation of criminal proceedings against Plaintiff. To the extent Plaintiff's claim is somehow premised on the eventual testimony Officer Hinds provided against Plaintiff at trial, although irrelevant to the initiation of criminal proceedings, Officer Hinds would nonetheless be entitled to absolute immunity. *See Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)) (explaining that police officers enjoy the same absolute immunity as lay witnesses for their testimony at trial and that the penalty for false testimony at trial is a potential prosecution for perjury, not liability under § 1983). Officer Hinds is therefore entitled to summary judgment on Plaintiff's

malicious prosecution claim.

The result is different, however, for Officer Mahoney. The record evidences that Officer Mahoney provided a proffered statement to Officer Boccio—who then included Officer Mahoney's statement in his sworn probable cause affidavit. Even if Officer Mahoney did not provide sworn testimony directly to the prosecutor or the court, it is clear that the aggravated assault and resisting arrest charges were premised on Officer Mahoney's proffered statement. *See Malley v. Briggs*, 475 U.S. 335, 342–43 (1986) (police officers do not have absolute immunity for submitting affidavits in support of arrest warrant applications). Officer Mahoney is therefore not entitled to absolute immunity from Plaintiff's malicious prosecution claim.

## C.  Qualified Immunity

Even assuming absolute immunity does not apply to Officer Hinds, he is entitled to qualified immunity. Similarly, Officer Mahoney and Officer Boccio are also entitled to qualified immunity from Plaintiff's malicious prosecution claims.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies to a government official performing a discretionary function, a court must consider two factors: (1) whether the evidence shows that the official's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A court has the discretion to address the two prongs in either order. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The parties do not dispute that Defendants were government officials acting within their discretionary authorities by arresting Plaintiff. The question is therefore whether Defendants violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known.

"To establish a federal claim for malicious prosecution under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220,

1234 (11th Cir. 2004) (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir.

2003), *cert. denied*, 540 U.S. 879 (2003)).

> Under Florida law, a plaintiff must establish each of six
> elements to support a claim of malicious prosecution: (1) an
> original judicial proceeding against the present plaintiff was
> commenced or continued; (2) the present defendant was the
> legal cause of the original proceeding; (3) the termination of the
> original proceeding constituted a bona fide termination of that
> proceeding in favor of the present plaintiff; (4) there was an
> absence of probable cause for the original proceeding; (5)
> there was malice on the part of the present defendant; and (6)
> the plaintiff suffered damages as a result of the original
> proceeding.

*Id.* (citing *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002)

(citing *Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217 (Fla. 1986))). "The

failure of a plaintiff to establish *any one* of these six elements is fatal to a

claim of malicious prosecution." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632

So. 2d 1352, 1355 (Fla. 1994) (emphasis added).

It is well established that an arrest without probable cause is an

unreasonable seizure in violation of the Fourth Amendment. *See, e.g.*,

*Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010);

*Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).

"Consequently, the existence of probable cause defeats a § 1983

malicious prosecution claim." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240,

1256 (11th Cir. 2010) (citing *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th

Cir. 2008)). "'Probable cause' is defined as 'facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Id.* at 1257 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).

An officer, however, need not have *actual* probable cause to receive qualified immunity. Instead, an officer need only have *arguable* probable cause, which exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland*, 382 at 1232 (quotation marks omitted); *Crosby*, 394 F.3d at 1332. Whether an incident gives rise to probable cause, or arguable probable cause, depends on the elements of the crime. *Brown*, 628 F.3d at 735; *Crosby*, 394 F.3d at 1333. "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).

The crime of aggravated assault under Florida law consists of four elements: (1) the defendant intentionally and unlawfully threatened, either by word or act, to do violence to the victim; (2) at the time, the defendant

appeared to have the ability to carry out the threat; (3) the defendant's act created a well-founded fear in the victim that the violence was imminent; and (4) the assault was made with a deadly weapon. Fla. Stat. §§ 784.011(1), 784.021(1) (2011); *Campbell v. State*, 37 So. 3d 948, 949 (Fla. Dist. Ct. App. 2010).[7] To be convicted of aggravated assault on a law enforcement officer, the State must also prove that the victim was a law enforcement officer, that the defendant knew the victim was a law enforcement officer, and at the time of the assault, the officer was engaged in the lawful performance of his or her duties. *See* Fla. Standard Jury Instructions Criminal Cases § 8.12; Fla. Stat. § 784.07(2) (2011). Additionally, under Florida law, a person is guilty of the crime of resisting

---

[7] Although count three in both the information and indictment was titled "aggravated assault on a law enforcement officer," and asserted that Plaintiff made an "assault" by "threatening to do violence to the officer with a firearm," the information and indictment cited sections 775.087 and 784.045(1)(a)(2) of the Florida Statutes. (ECF No. 49-4 at 1; ECF No. 49-5 at 2.) At the time of the offense, however, §§ 775.087 and 784.045(1)(a)(2) pertained to aggravated *battery*. A battery is not the same as an assault. *Compare* Fla. Stat. § 784.03(1)(a) (2011) ("The offense of battery occurs when a person: 1. Actually and intentionally touches or strikes another person against the will of the other; or 2. Intentionally causes bodily harm to another person."), *with* § 784.011 ("An 'assault' is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent."). It is unclear from the record what—if any—impact this had on the eventual judgment of acquittal for aggravated battery on a law enforcement officer. Nevertheless, the probable cause affidavit signed by Officer Boccio does not reference statutes and instead only references aggravated assault. There is no evidence suggesting that Officer Boccio—or any of the Defendants—had anything to do with the specific statutory number under which Plaintiff was prosecuted. There is also no evidence suggesting that any of the Defendants claimed, at any point, that Plaintiff touched or struck any of the officers.

an officer with violence if that person "knowingly and willfully resists, obstructs, or opposes any officer . . . in the lawful execution of any legal duty, by offering or doing violence to the person of such officer . . . ." Fla. Stat. § 843.01 (2011).

Even assuming Plaintiff is not judicially estopped from taking the position he takes in this case with respect to the arrest, Plaintiff cannot create a genuine dispute of a material fact by presenting sworn testimony in this case that completely contradicts the sworn testimony he gave at his criminal trial. It is well established that a party cannot create an issue of fact by submitting a sworn declaration that contradicts, without explanation, prior sworn testimony on the topic. *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *see Hamilton v. Sheridan Healthcorp Inc.*, 602 F. App'x 485, (11th Cir. 2015) (district court did not err in granting summary judgment to defendants because plaintiff's later statement in his affidavit, which directly contradicted his prior testimony, was insufficient to create an issue of fact); *Langston v. Johnson*, 478 F.2d 915, 918 n.17 (D.C. Cir. 1973 ("It is well settled that a certified transcript of judicial or administrative proceedings may be considered on a motion for summary judgment."); *Hogue v. City of Fort Wayne*, 599 F. Supp. 2d 1009, 1017 (N.D. Ind. 2009) (denying motion to strike portion of plaintiff's affidavit

because statements in the affidavit did not contradict plaintiff's testimony at his prior criminal trial and instead offered greater detail about the circumstances surrounding his arrest); *Kraft Gen. Foods, Inc. v. Cattell*, 18 F. Supp. 2d 280, 284 (S.D.N.Y. 1998) ("Transcript testimony [from a prior trial] serves the same purpose as an affidavit under Fed. R. Civ. P. 56(e) . . . and is comparable in that each form of testimony is sworn and submitted without cross-examination by the adverse party.").

As previously discussed, Plaintiff's sworn assertions in this case—that he never woke up to the officers' commands, never stood up, and never started to run from the officers—completely contradicts his trial testimony. Plaintiff failed to respond to the motion for summary judgment, much less submit an affidavit clarifying his prior testimony. His contradictory statements in this case therefore cannot create a genuine dispute of a material fact regarding the arrest. Because Plaintiff cannot contradict his prior testimony (without any explanation) the relevant undisputed facts this Court considers for summary judgment purposes are as follows.

Law enforcement, including Defendants, were searching for Plaintiff, who was suspected of shooting and killing one victim and shooting another victim during an attempted drug deal earlier that night. The officers located

Plaintiff asleep at a bus stop by tracing the coordinates of his cell phone based on the phone number the suspect had used to communicate with the victims to arrange the drug deal. The officers approached, wearing police-labeled gear, and turned on their police lights. Plaintiff woke up when the officers approached and gave their orders to get down on the ground and show his hands. He did not comply with those orders and instead stood up and started running. As he was running he reached toward his waistband to pull up his falling pants. Plaintiff had a gun tucked in his waistband. Officer Mahoney was in fear for his life when Plaintiff reached for his waistband because he believed Plaintiff was reaching for his gun and that Plaintiff would shoot him.

No reasonable jury could conclude based on these undisputed facts that Defendants did not have probable cause—or at the very least, arguable probable cause—to arrest Plaintiff for aggravated assault on a law enforcement officer and resisting an officer with violence. Surely these circumstances are sufficient to warrant a prudent man to believe that Plaintiff was resisting arrest and offering to do violence to the officers. Likewise, a prudent man could believe that Plaintiff knew the individuals were law enforcement officers and threatened to and could do violence via a deadly weapon, thereby causing an officer to fear for his life. Because

there was probable cause to arrest Plaintiff for these two charges, Defendants are entitled to qualified immunity.[8]

Moreover, there is no evidence that Defendants provided any fabricated statements or sworn testimony to the court or the prosecutor regarding the circumstances of the arrest. Accordingly, Plaintiff's malicious prosecution claim fails. *See Lomax v. Diaz*, 390 F. App'x 900, 902 (11th Cir. 2010) (district court did not err in dismissing malicious prosecution claims based on qualified immunity where the officers had arguable probable cause to arrest the plaintiff for battery). Defendants, therefore, are entitled to summary judgment in their favor on Plaintiff's malicious prosecution claims.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

---

[8] The judgment of acquittal on these two charges does not alter this conclusion. A judgment of acquittal is entered when "at the close of the evidence for the state or at the close of all the evidence in the cause, the court is of the opinion that the evidence is insufficient to warrant a conviction . . . ." Fla. R. Crim. P. 3.380(a). "A judgment of acquittal is appropriate if the State fails to present sufficient evidence to establish a prima facie case of the crime charged." *Tillman v. State*, 842 So. 2d 922, 925 (Fla. Dist. Ct. App. 2003); *Hartley v. State*, 125 So. 3d 797, 799 (Fla. Dist. Ct. App. 2013) ("To determine whether a judgment of acquittal is appropriate, the trial court uses the 'sufficiency of the evidence' standard, which tests whether the evidence is legally adequate to permit a verdict.") Merely because the State failed to present sufficient evidence to establish the prima facie case of aggravated assault on a law enforcement officer and resisting an officer with violence does not mean that there was not at least arguable probable cause for the arrest on those two charges. *See Lee*, 284 F.3d at 1195.

Defendants' Motion for Summary Judgment, ECF No. 48, should be **GRANTED.**

**IN CHAMBERS** this 11th day of January 2018.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**